IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| PATRICK D. McCOWN,<br>　　　Plaintiff<br><br>v.<br><br><br>LIFE INSURANCE COMPANY<br>OF NORTH AMERICA,<br>　　　Defendant | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO.<br>5:22-cv-1063 |

### Plaintiff's Original Complaint

Life Insurance Company of North America and claims administrators working on its behalf wrongfully denied Patrick McCown's claim for long-term disability (LTD) benefits. Life Insurance Company of North America owes McCown LTD benefits.

### I. Parties

1. Plaintiff Patrick D. McCown is a resident of Helotes, Medina County, Texas.

2. Defendant Life Insurance Company of North America (LINA) is an insurance company licensed to do business in Texas and was the underwriter of the group LTD policy which insured McCown. LINA can be served with citation by serving its agent for service of legal process CT Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas. 75201-4284.

1

## II. JURISDICTION AND VENUE

3. This lawsuit is a claim for disability benefits provided by an ERISA welfare benefit plan brought under 29 U.S.C. §1132(a)(1)(B). This court has jurisdiction over this claim for disability benefits under 29 U.S.C. §1132(e)(1) of the Employee Retirement Income Security Act of 1974 ("ERISA"). Venue is proper in the Western District of Texas, San Antonio Division, in accordance with 29 U.S.C. §1132(e)(2) as the LTD benefit payment obligations under the group policy are to McCown at his home in Helotes, Medina County, Texas.

## III. STATEMENT OF FACTS

4. Prior to becoming disabled, Patrick McCown worked for the Williams Companies, Inc. as a Senior Manager of Operations for the Eagle Ford North site in Pearsall, Texas. He worked for Williams for over 37 years. Williams is a Fortune 500 company based in Tulsa, Oklahoma. Its core business is natural gas processing and transportation, with additional petroleum and electrical generation assets. McCown was responsible for managing approximately 50 employees and 5 supervisors. He was required to travel to remote sites two to three times per week, sometimes more. His job responsibilities included seeing that employees under his supervision safely extracted natural gas from the ground and into a pipeline, and that they properly separated and dealt safely with the byproducts. Many of the substances at the well-sites were extremely toxic.

5. Beginning in 2013, McCown began to suffer from severe groin pain that interfered with his day-to-day work activities. He persevered through the pain, continuing to work to provide for his family. He saw specialists, went to the Mayo Clinic, and even underwent surgery, but to this day he has not found a cure. Often times he would have to come home from work early because he was physically ill from the pain.

6. Despite a strong narcotic medication regimen, his groin pain has grown worse over time. His pain, and the increasing doses of narcotic medication required to control his pain, began to interfere with his abilities and his judgment at the work-site. Due to his impaired ability to concentrate, he caught himself making mistakes in regards to important safety protocols for those whom he supervised. In one instance, a colleague saw his errors and as a result a serious accident was avoided. Had a colleague not corrected his error in regards to the process he had proposed for replacement of a section of piping, a deadly gas, Hydrogen Sulfide, would have been released into the atmosphere.

7. His physician increased his dosage of narcotic medication in 2020 to treat his increasing pain. Not only was McCown perceptive and responsible enough to recognize his increased impairments, he also became more concerned about his operation of the company vehicle that he used to drive to the work-site. In regards to the use of pain medication while working, the Williams work policy provided as follows:

> "Use of Legally Obtained Drugs

> Employees adversely affected by their use of any legally obtained drug (prescription or over the counter) may not be allowed to perform their regular job in such a condition.
> ……….
> Williams prohibits the possession and use of any substance, whether legal or illegal, prescription or non-prescription, that impairs an employee's ability to perform his or her job in a safe manner."

8. As of October 27, 2020, McCown stopped working because he could no longer perform the material duties of his occupation due to his increasing pain and the impairing effects of the narcotics that he needed to control the pain. McCown was forced to abandon his goal of reaching forty years of service for Williams.

**<u>McCown's STD Claim</u>**

9. By virtue of his employment, McCown had short and long-term disability benefits. His short-term disability (STD) benefits were funded by Williams and administered by LINA. His LTD benefits were provided through a group policy issued to Williams insuring its employees that was underwritten and administered by LINA, and later administered by New York Life on behalf of LINA.[1] The group LTD policy is an ERISA welfare benefit plan.

10. Williams' STD program pays benefits for a maximum period of 26 weeks. The benefit amount, at least in regards to McCown because of his long tenure with the company, was 100% of his pre-disability earnings. A plan participant who remains disabled after 26 weeks is transitioned to LTD benefits. As a condition of receiving LTD benefits, the insured is required to provide

---

[1] New York Life acquired Cigna's group life, accident, and disability insurance business in December 2019. The group policies underwritten by LINA were part of Cigna's group disability insurance business and were part of the acquisition by New York Life.

4

evidence that he or she was disabled during the elimination period of 26 weeks. The LTD benefit under the LINA policy pays a basic benefit of 60% of a participant's pre-disability earnings but offers a buy-up option for plan participants that pays 70% of a participant's pre-disability earnings. McCown was enrolled in the buy-up option and paid the additional premiums required for that option.

11. LINA approved McCown's STD claim for the period from October 26, 2020 until March 26, 2021. Despite no improvement in McCown's condition, LINA sent McCown a letter dated April 21, 2021, indicating that it had terminated McCown's STD benefits as of March 27, 2021. LINA contended that as of March 27, 2021 and thereafter, the medical records did not support a claim for cognitive or functional limitations that would prevent McCown from returning to work.

12. McCown timely appealed LINA's adverse benefit determination. His treating physician told LINA in emphatic terms why the distant conclusions of its claims personnel and medical consultants were in error:

> "...chronic pelvic/groin pain S/P nerve block and right orchiectomy without relief. Patient is on chronic daily narcotics due to this pain. This started in 2013 and he was seen at Mayo Clinic then. Has seen several specialists in the past including neurology and urology and pain management……
> He has had thorough work-up for this by multiple doctors including urologist, neurologists, pain management specialists, but pain never subsides-He will continue current narcotics long term as nothing else alleviates the pain. We have filled out multiple disability forms for him, saying that he will not be able to return to work, but they want that information again. He WILL NOT BE ABLE TO RETURN TO WORK…."

13. In his appeal to LINA, McCown explained why could not return to work:

> "…Given the Williams policies I can not drive a company (vehicle) while using the pain control medications. Traveling to remote sites as well as responding to emergency situations is a requirement of the Sr Manager's role. I cannot fulfill those requirements given the (Williams) policy.
>
> As for the personal side of dealing with the pain, while using the medications I often find it hard to concentrate and stay alert. The pain has continued to get worse over time and has impacted my mental condition. I wouldn't want to ever put someone in harms way with a decision I made due to a lapse in judgment on my part."

14. McCown provided approximately 400 pages of documents, mostly medical records, in support of his appeal.

15. Despite the clear evidence that he was not able to return to work, claims administrator New York Life (NYL) denied McCown's appeal by letter dated January 13, 2022. In summary, NYL determined that McCown was not disabled after March 26, 2021. NYL advised that McCown had exhausted all administrative levels of appeals and no further appeals would be considered. In the final denial, NYL also advised McCown that he had a right to bring a legal action for benefits under section 502(a) of ERISA.

16. McCown filed suit for STD and LTD benefits in this court on February 11, 2022 (Case No. 5:22-cv-126). LINA and its parent company NYL disputed McCown's allegation that he had submitted a claim for LTD benefits, insisting that he had not exhausted the claims and appeals process of the LTD policy. Rather

than fight that battle, McCown agreed to dismiss his lawsuit without prejudice and proceed administratively with his LTD claim.

**<u>McCown's LTD Claim</u>**

17. McCown submitted the same documents for his LTD claim that he had submitted for his STD claim. Since NYL acquired Cigna's group life, accident, and disability insurance business in December 2019, and the LINA policy at issue was part of the acquisition, claims administrators with NYL handled McCown's LTD claim and appeal. McCown also completed and submitted the required LTD forms with his claim.

18. Despite clear evidence that McCown remained disabled, NYL denied McCown's LTD claim by letter dated May 20, 2022. The reason given for denial was the same: according to NYL, the "medical records did not demonstrate functional restrictions and limitations which would preclude (McCown) from performing the functions of his light occupation."

19. McCown timely appealed. He reiterated that he had provided approximately 400 pages of medical records that documented his remarkable efforts to keep working, the increase in his pain levels, his inability to perform his job functions due to pain and narcotic medications taken in an attempt to control the pain, his increasing mistakes as a result of his inability to focus-putting the employees he supervised at risk-and his primary care physician's opinion that he could not work.

20. McCown submitted his appeal on May 31, 2022. NYL acknowledged his LTD appeal by letter dated June 2, 2022. On June 16th, 2022 NYL sent a letter to McCown requesting an authorization to acquire McCown's disability claim file from the Social Security Administration (SSA). McCown complied, faxing the authorization to NYL on the 29th of June. On July 15th, 2022, NYL indicated in a letter that McCown had not provided information that it requested. This was inaccurate. McCown responded by letter dated July 30th indicating that he had provided 423 pages of documents, including his most recent medical records, and requested that NYL advise him of what was missing. In NYL's next missive, dated August 5, no additional documents were listed but NYL indicated that it considered the appeal tolled while it obtained McCown's file from the SSA. McCown responded in a letter faxed to NYL on September 7, 2022, reiterating that his claim for disability benefits from the SSA had not been approved and questioning why NYL wanted the SSA file, as he had provided all of his relevant medical records. To date, no decision has been made on McCown's appeal.

21. McCown never agreed to toll the time period within which his LTD appeal was to be decided, nor did he request that NYL obtain his file from the SSA, nor did he base his disability claim with LINA upon a finding by the SSA, as his SSDI (Social Security Disability Income) claim is still pending.

**McCown's LTD Administrative Remedies Should be Deemed Exhausted**

22. McCown's administrative remedies available under the policy for his LTD claim should be deemed exhausted under the U.S. Department of Labor

(DOL) regulations, 29 CFR §2560.503-1(l), as NYL has failed to adhere to the time requirements for deciding McCown's appeal. McCown submitted his appeal on May 31, 2022. The only time-period that can be considered tolled during the appeal period was the thirteen days between the time NYL requested McCown's authorization to obtain McCown's file from the SSA (June 16, 2022) and the time McCown provided it (June 29th, 2022). Adding those thirteen days to the maximum period allowed by DOL regulations for deciding McCown's appeal (90 days), NYL was required to decide his LTD appeal by September 11, 2022 (103 days from May 31, 2022). To date, no decision has been made on McCown's LTD appeal.[2] Under the DOL regulations, 29 CFR §2560.503-1(l), McCown's obligation to pursue his claim administratively should be deemed exhausted by NYL's failure to comply with the DOL time requirements for deciding his appeal. McCown is now entitled to bring this action for benefits under DOL regulation under 29 CFR §2560.503-1(l) and §1132(a)(1)(B) of ERISA.

**NYL's Decision to Terminate Benefits Was Contrary to the Preponderance of the Evidence Or Was an Abuse of Discretion**

23. Under 29 CFR §2560.503-1(l) (2)(i), the decision to deny McCown LTD benefits should be reviewed by the Court under a preponderance of the evidence standard of review. The failure of NYL to follow reasonable claims procedures, i.e. its failure to comply with the time requirements for deciding McCown's appeal and McCown's choice to file suit, means that NYL forfeited any

---

[2] On September 27, 2022, NYL notified claimant that it requires an extension of up to 45 days, up until 11/16/2022, to decide McCown's LTD appeal.

discretion that it had to decide the claim. The court cannot review a final decision denying benefits under an abuse of discretion standard when no discretion was timely exercised by the fiduciary appointed to decide administrative appeals.

24. In the alternative, even if there is language in the policy or plan-related documents that is interpreted to grant NYL discretion to make benefit determinations under the group LTD policy underwritten by LINA, and that discretion isn't deemed forfeited by NYL's failure to timely decide McCown's LTD appeal, these discretionary provisions are unenforceable as to McCown's claims for LTD benefits because it is a violation of Texas law to seek enforcement of a discretionary clause in a disability policy against an insured living in Texas. Texas Insurance Code, §1701.062, and 28 Texas Administrative Code §§3.1201-3.1203. This anti-discretionary statute and its accompanying regulations are not preempted by ERISA.

25. In the unlikely event that NYL is found to have retained its discretionary authority so that this matter is reviewed under an abuse of discretion standard of review, NYL abused its discretion in denying McCown LTD benefits.

26. Since LINA is a subsidiary of NYL, payment of LTD benefits under the LINA policy has a negative financial impact on NYL. As a result, NYL acted under a conflict of interest when it decided McCown's claim and denied his appeal (a deemed denial under DOL regulations). If abuse of discretion is determined to be the proper standard of review, this conflict of interest should be considered as a

factor by this Court in determining whether or not there was an abuse of discretion and McCown is entitled to LTD benefits.

## IV. CAUSE OF ACTION

### Count I: Claim for LTD Benefits from April 27, 2021 And Thereafter Under 29 U.S.C. §1132(a)(1)(B) of ERISA

27. The preponderance of the evidence makes clear that McCown is entitled to LTD benefits under the LINA policy. If this Court adopts the abuse of discretion standard of review, the evidence within the record is clear that LINA's administrators abused their discretion in denying LTD benefits to McCown.

28. McCown seeks to recover his LTD benefits, from April 27, 2021, to the present (and so long as this case is pending), under the authority of 29 U.S.C. §1132(a)(1)(B) of ERISA. As he remains disabled as that term is defined within the LTD policy, McCown is entitled to LTD benefits and LINA is obligated to pay those benefits under the LTD group policy.

### Count II: Declaration of a Right to Other Benefits And Request for Reimbursement

29. McCown also seeks to a declaration that he is entitled to other plan benefits, including continued coverage for him and his family under the Williams health care benefit plan, as a result of a finding that he is entitled to LTD benefits under the group policy. McCown also seeks reimbursement from LINA for the premiums that he has paid for alternative (and more expensive) health care

coverage. McCown has had to pay these premiums as a result of the wrongful denial of LTD benefits.

## V. RELIEF REQUESTED

30. McCown's pre-disability earnings were approximately $195,324.31 per year ($16,277.03 per month). Beginning April 27, 2021, he is entitled to LTD benefits in the amount of $11,393.92 per month, ($16,277.03 x .7). As of November 27, 2022, McCown is entitled to the sum of $216,484.48 in back benefits ($11,393.92 x 19 months). McCown requests these back benefits as well as additional monthly benefits that accrue after November 27, 2022 but during the pendency of this litigation at the rate of $11,393.92 per month. In addition, McCown seeks recovery of his health care premium payments since October, 2021, in the sum of $22,684.03 through October of 2022, which will continue to accrue while this case is pending.

## VI. ATTORNEY'S FEES

31. McCown requests his attorney's fees and costs under 29 U.S.C.A. 1132(g).

## CONCLUSION

Wherefore, premises considered, McCown requests LTD benefits in the amount of $216,484.48, plus monthly disability benefits that accrue after November 27, 2022 but while this case is pending at the rate of $11,393.92 per month, and reimbursement of health care premium payments and a declaration of

rights as to all other benefits available to LTD recipients under Williams' benefit plans. He also requests his attorney's fees, for pre-judgment interest at the maximum rate allowed by law, post-judgment interest, and for such other and further relief, both at law and in equity, to which he may show himself to be justly entitled.

Respectfully Submitted,

**Law Office of Jeffrey E. Dahl**
The Commerce Building
314 E. Commerce, Suite 300
San Antonio, Texas 78205
(210) 527-0900 (Telephone)
(210) 527-0901 (Facsimile)
jdahl@erisaattorneyintexas.com

By: */s/ Jeffrey E. Dahl*
**Jeffrey E. Dahl**
**State Bar No. 05310900**
**Attorney for Plaintiff Patrick D. McCown**